Welcome to this May session of Embanked. I've been advised that both councils have to have their uninterrupted period of time first before the time elapses. The clerk will have the clock set so you'll know when, if you should decide to not use all of that and open yourself up for questions, just say that and then she'll set the clock accordingly. The main feature is to stay in the microphone and answer the questions. It's highly likely that you'll get some questions, so pay attention to where the question is coming from. If you have a little difficulty with that, I'll try to help point you to where the question is coming. But answer the question succinctly, stay in the mic, and you know the lighting system, and all will be well. All right. First up, we call the case, Melton v. Phillips. Mr. Davis. Yes, Your Honor. Thank you, Your Honor. Can I please report, counsel? Yes. I appreciate, Your Honor, being here for this en banc hearing. It's an exciting event when the entire court's together. Got to have your theater voice here, you know. All right. I'll try to speak up, Your Honor. Thank you. It is exciting to be here for an en banc hearing when all the court's together. It's a special event. So I hope that I can answer all the questions that you have, and I hope that I can present my case succinctly to you and give you some time back. The primary facts in this case relate to, initially, the affidavit of the deputy involved, who is Deputy Kelly Phillips. What that specifically relates to, and it's in the Record on Appeal at page 91 through 93, at the time this incident occurred, Kelly Phillips was a mere patrol deputy. His job, essentially, was to answer calls and go out and make reports, arrest people who committed offenses in his presence, issue traffic citations and things of that nature. He was not an investigator. On the occasion in question, on June 28th of 2009, Deputy Phillips went out because he was dispatched to a call. He was told to go to the hospital in Greenville, Texas, and take a report on an individual who claimed to have been assaulted. He did that. He went to the hospital in Greenville, and he took a report from Mr. Griffith, who specifically claimed to have been assaulted by Michael Melton. He told the deputy that at 10.30 at night, he drove past the house that belonged to he and his wife, that they were getting a divorce, and that he saw Mr. Melton, who was his wife's boyfriend, at their house, where he was not supposed to be. Mr. Melton came out, accosted Mr. Griffith, they got into a fight, and Mr. Melton beat him up. At the hospital, Mr. Griffith, like a lot of people who were going through a divorce, he knew all about Mr. Melton. His address, how old he was, knew all about him, provided the information to the deputy in this case, which was Deputy Phillips. Now, Deputy Phillips didn't make an arrest. He didn't make a probable cause determination. Deputy Phillips took his report and turned it over to CID, the Criminal Investigation Division, for the Hunt County Sheriff's Office. The Criminal Investigation Division investigator who picked it up was Captain Haynes, and about 14 days later, the investigator in the case, Captain Haynes, made contact with Mr. Griffith and said, Mr. Griffith, please come in. I need a sworn statement from you before we can proceed with your investigation. Mr. Griffith said that he would come in, but it wasn't until a year later, in March of 2009, that Mr. Griffith actually came in and provided his sworn statement to the investigator who was in charge of the investigation for the Criminal Investigation Division of the Sheriff's Department, Investigator Haynes. Investigator Haynes, after receiving the sworn statement from Mr. Griffith, and the sworn statement corroborated the things that Deputy Phillips had put in his report as to what had happened out there on the occasion about being beaten up and about Mike Melton beating him up. The CID, the Criminal Investigation Division, the investigating officer, Captain Haynes, sent the case up to the County Attorney's Office. The County Attorney's Office received the case file and determined that it would prosecute. The County Attorney's Office drafted a complaint. In the complaint, the only reference to Deputy Phillips' initial report is that it relies on that report for Deputy Phillips' observations. The only observations that Deputy Phillips made was at the hospital when he observed the injuries to Mr. Griffith. So the reliance on Deputy Phillips' report relates only to his quotation, observations, which solely were restricted to his observations of the injuries to Mr. Griffith at the scene. Deputy Phillips specifically has stated that he based what he put in his report, identifying information, what occurred out there at the scene, he based that solely on what he was told by Mr. Griffith. I think it's really important to note in this case that none of these things after the date of the initial report, after Deputy Phillips submitted his report to CID, the things that occurred over the course of the next year, the investigation by CID, the sworn statement by the complaining party, the complaint drafted by the County Attorney's Office, the hearing in front of the judge, the county court at law judge who is an attorney, who made a determination of probable cause, the issuance of the warrant, none of that involved Deputy Phillips, none of it. All Deputy Phillips was involved in was going out and taking the initial report. Now, the plaintiff in this case has claimed through an expert witness that they must have pulled up a PID, a local identifying information, on Mr. Melton that Deputy Phillips must have. But I would suggest to you, and it's important to note, that nowhere in Deputy Phillips' report does it contain the Social Security number and other identifying information that is contained in the warrant. When the warrant was issued, it had the Social Security number of Mr. Melton and additional information that was not contained in the report of Deputy Phillips. So obviously, the identifying information from a year before was not what the identification of Mr. Melton was based on. And I would suggest to you that all of these things that occurred in the course of this period of time, over the year following the initial report, all of those things that occurred, make this situation far too attenuated, far too stretched out to conceivably blame Deputy Phillips. And the standard here, and I think it's really important to note, the majority relies on heart, solely, solely on heart. The majority expressly states that it will not rely on the two opinions from this Court, 1 in 07 and 1 in 11, that specifically relate to the facts of this case, and that the majority admits are on all fours in controlling in this case. And the majority does that by asserting that there's a conflict between heart and between the two other cases. And I would suggest to this Honorable Court that there is no conflict between those cases. First of all, the heart case involved an assistant district attorney who was personally involved in drafting the affidavit in support of an application for a warrant. He was personally involved in drafting that affidavit. And he put a statement in there that was misleading. Now, the Court found that he had qualified immunity, that he did not act recklessly. But he was actually personally involved in the drafting of that affidavit, and he was personally involved in putting that statement in there. So the assertion that somehow this case and the two other cases that have been discounted by the majority don't fit within this parameter is, I believe, totally inaccurate. Both Hampton and Jennings, which are controlling in this case, fit that same factual scenario, as does heart. What heart states specifically is that to be liable, there must be a statement provided for use in an affidavit in support of a warrant. There has to be a statement provided for use in an affidavit in support of a warrant. And that's exactly what happened in that case. The district attorney provided a statement for use in a warrant. It is the same thing. There has to be some type of knowledge or intent that a statement is going into a warrant. That is a prerequisite. It can't be somebody distantly related a year prior to that doesn't even know if a case is ever going to be filed or an investigation is ever going to be done or an affidavit is even going to be prepared or that a warrant is ever even going to be issued. There's an issue as to recklessness as well. To find that my client is not entitled to qualified immunity, the court would have to find that my client acted deliberately or recklessly. In addition to knowing and putting a statement intentionally into an affidavit, it would have had to have been done deliberately or recklessly. Well, recklessly means that the officer would have had to have known that what he was doing was most likely false. And I do not believe that there is any evidence of that at all whatsoever. Nothing to suggest that Deputy Phillips acted in a reckless manner. Now, the majority suggests that recklessness should always be a question of fact and it can never form the basis of a qualified immunity finding. But I'll suggest to you, Your Honors, that that flies directly in the face of Hart because Hart found that the assistant district attorney was entitled to qualified immunity and that there was no evidence that he acted recklessly. All right, Mr. Davis, you're open for questions. Thank you, Your Honor, very much. I mean, I didn't mean you had to stop talking. I'm just alerting you that you're open now. I'm ready to answer questions, Your Honor. Now, Mr. Davis? Yes, Your Honor. I believe we wouldn't be here if all those facts you talked about were in the record. But they are not, are they? This is on a summary judgment based on an allegation that Mr. Phillips was reckless. And none of those facts were given to him. The only way they could have come into the affidavit is he got them from somewhere else and put them in his report. No, Your Honor. That's the allegations, and we're here on summary judgment. We don't have jurisdiction to decide the question of whether he was reckless or not. It's been alleged and posited that he was reckless or intentional, and that is sufficient to state a cause of action against him. Your Honor, I was not. He's not right. I'm sorry, Your Honor. Isn't that correct? Your Honor, I respectfully disagree. I don't believe there's any fact issue here at all. The only thing that the court below found to be potentially a fact issue and that the majority potentially found to be a fact issue was the statement from their expert witness that there must have been a PID system used in this case that somehow pulled up identifying information. The Rule 28J letter submitted by plaintiff after the argument specifically states that there could have been no PID information or identification because this particular person, Mr. Melton, had never been arrested in Hunt County before. Now, what we do know is that this involved very likely it's a family-type situation. It could have been a family violence call. The husband goes by the house. The wife and the children are in the house. The wife's boyfriend's in the house. The wife's boyfriend comes out and assaults this guy. And like in most family law cases where the spouse has a boyfriend who's hanging around their house, most spouses know the identity of that boyfriend or girlfriend, know where they live, know their phone number, know their driver's license number, know everything about that individual. That's fairly common. You know, if somebody's going through a divorce and their spouse has a current boyfriend or girlfriend, they know that information. If that's so, how could the wrong information get into the warrant? And how could the wrong person have been arrested? If these people knew exactly where the real Michael Melton, the one that was the assailant, if they knew exactly where he lived and everything, why didn't that end up in the affidavit? Your Honor, we don't know. We're really speculating here. We don't know. This case had not been tried. You don't know that. You haven't been able to put any evidence on it because it's on summary judgment. Well, we put evidence into the record, Your Honor. Now, what we do know is that plaintiff denies having committed the crime. The case against him was five years old when he was arrested. It was dismissed for insufficient evidence. There is no factual issue. There is no evidence that somebody else committed this crime. Can we show that it was him? No. Can they show that it was somebody else by a different Michael Melton name? No. What we do have before us is the information that's on record in this case, which is the deputy stating, I went out there and I was given this information. Isn't the plaintiff's position that the middle name of Michael Melton is the wrong Michael Melton? Wasn't that the position of the plaintiff? Your Honor, that's an excellent point, and I'm really glad you brought that up. Initially, when Deputy Phillips wrote his report, he stated the name Michael David Melton. Then when it went through the investigation at CID, that name was different. It was noted as Mike Melton. Then when it went to the county attorney's office, it was noted as Michael Melton. And all the information contained in the complaint accurately identified Michael Melton. So the complaint doesn't actually have any false information in it? No, Your Honor, it doesn't. But the report says Michael David Melton, doesn't it? The report says that, but after the investigation was conducted, it changed. So what is Mr. Phillips' explanation as to how Michael David Melton ended up in the report that he prepared? What's his explanation as to how that occurred? Your Honor, the evidence in the record, the only evidence in the record, is that he was given that information at the hospital by Mr. Griffith, who knew Michael Melton was a known suspect. But he claims that Mr. Griffith gave him the name Michael David Melton? Is that what you're saying now? Your Honor, what I'm saying is that the information that Deputy Phillips took down and wrote down in his report was the information that Deputy Phillips claims Mr. Griffith gave him at the hospital. The answer to my question is yes. He claims that Mr. Griffith gave him the name Michael David Melton. Is that right? If it's Michael David Melton reflected in the report, then that would be correct. But does it matter whether or not he got the name David from the computer system or whether he got it from the witness interview? What difference does it make if neither the warrant nor the complaint had the wrong middle name or had the middle name? It makes absolutely no difference at all because neither the complaint nor the warrant had that wrong identifier. Does the report contain any other descriptive information about the perpetrator? Yes, Your Honor. It has the address that Mr. Griffith knew that this individual lived at. Does that address match the address of the plaintiff in this case? Well, it does if you look at the bookend report, so I don't know. So there's other descriptive information that ended up in the report, all of which Mr. Phillips now claims he got from the complaining witness. Is that what you're saying? Deputy Phillips has always claimed that the information he ascertained came from his report and meeting with Mr. Griffith. So he got an address from him? Well, apparently so. Age, height, weight? Did he get that from him? Yes, sir. But did he? One at a time. All right. Judge Jones. Yes, Your Honor. I'm looking at Richard Griffith's affidavit, which is one executed in April of 2010, months after the event, and he clearly refers to Mike. It looks as if it's handwritten in his own handwriting. He refers to Mike Melton numerous times and says he was going to Private Road 2543. I mean, surely before they were able to do the final complaint and the warrant and so on, the magistrate had to rely on his affidavit too, did it not? Yes, Your Honor, exactly. His affidavit and his sworn statement, nothing would ever have been filed unless he had come in, met with a CID investigator, and made the sworn statement. So you're exactly right. The other thing that really seemed odd to me is that on Deputy Phillips' report, it identifies Michael David Melton as being a white male, 44 years old, 5'10", 145 pounds, hair brown, eyes brown. Well, the only difference between the only significant difference between that and the fellow who was incorrectly addressed, arrested, is that the plaintiff's eyes were blue. I mean, we have his we have a picture of his mug shot in here with the description. Yes, Your Honor, that's I mean, they're strikingly similar in appearance. Yes, Your Honor, you're exactly right. They are very, very similar in appearance. And your first point is well taken. After Mr. Griffith met with CID, the name became Mike Melton, not Michael David Melton. The complaint was never made out for Michael David Melton. Can I ask you a question about the law? Yes, Your Honor. In both briefs, I don't think that any citation was made to other circuits. But those other circuits have been interpreting Frank's, and especially footnote 6, and the concern about not allowing insolent by a non-affiant. So we have 30 years of other circuit case law. So my question is, if you're familiar with that case law, is the rule that you're accept, does it reject decisions like the Tenth Circuit saying that if the misstatement is, quote, relied on, government accountability exists? Do you accept the Tenth Circuit Kennedy reasoning and interpretation of Frank's footnote? Or are you urging us to have a refinement on it? On that, Your Honor. Your Honor, I believe, really I believe what the circuits are saying and what Frank's is saying. There has to be some effort by law enforcement who's not drafting the affidavit to surreptitiously submit information, get it into that affidavit, and hide the fact that they're doing it. So there has to be some type of motivation, bad motivation in doing that. It can't just be relied on or incorporated by the affiant. It's got — your view is a sort of officer focus. He has to have some intent that it end up in the Fourth Amendment government action? I believe so. There's got to be some knowledge. What's the best — last question from me. What's the best case that describes that formulation, giving sort of meat to footnote 6 in Frank's? What's your best circuit case that discusses that? My best Fifth Circuit case is Jennings, Your Honor, which I believe is directly on point in this case. The other case, I believe, Your Honor, in addition to that is Hampton. Thank you. I think those are directly on point. Also, when you were earlier talking about Hart, you want to rely on the language in there that the information must be provided for use in a warrant. Several of my colleagues, and you, of course, yourself, have mentioned this is summary judgment. How do we know at this stage what the role of Deputy Phillips, Patrolman Phillips maybe at the time, was? Do we need to get into the head of Phillips? Did he think that this was leading to a warrant to arrest the fellow the next day? It seems like those are unsettled factual questions if the rule is going to be, which is one of the things this en banc court needs to decide, that it is actionable against someone who provided information for use in a warrant. How do we know one way or the other in this case? As to the mental status of Deputy Phillips? Maybe it's not the mental status, but what was the purpose of the incident report? Do those sometimes get turned in to the basis of affidavits, requests for warrants? We don't have that in the record as to how Hunt County, if I got the right one of the two counties, and how they would proceed with this sort of arrest. Well, Your Honor, the case is still pending against Hunt County, and the plaintiff can try to make a policy custom or practice claim. But in this case, the court allowed a specific time period for plaintiff to develop his record, and plaintiff failed to do that. And he actually has complained, oh, I need more discovery time. Well, Your Honor, we assert the defense of qualified immunity, and then plaintiff has the burden of showing that we don't deserve qualified immunity. We don't have the burden of proof in that instance. We just have the burden to raise the issue. Plaintiff has to come forward with evidence to defeat it. And your question, Your Honor, I believe the answer to that is we shouldn't be penalized because plaintiff has not produced evidence to defeat that. All right. Mr. Davis, thank you. You have exhausted your opening time, but you've reserved your rebuttal time to come back up. Thank you, Your Honor. All right. Thank you. All right. Mr. Duff, you're on, and am I correct also your first half is uninterrupted? Is that correct? Yes, Your Honor. All right. As I said, just stay good and loud in the mic. Thank you, Your Honor. May it please the Court, Mr. Davis. Your Honors, this is a case where Michael David Melton is the innocent man, and he was jailed for 16 days on the brutal assault by another, another who he's never met. Mr. Melton, Mr. Michael David Melton's liberty was restricted because Deputy Phillips put his identifiers in instead of the true assailant. Now, the report that Phillips created, I can come up with no other reason what that report would be for except to procure a warrant for the arrest of an assailant. But I think it's important to point out at this point, and the cases that have cited by appellant, and the difference between my client, a man who has nothing to do with this assault, and cases cited by him is that there is no nexus between my client and any of the events that happened in the assault. Most cases, there have been, the plaintiff was somewhere in the same set of facts as the arrest. This is not a case where my client was at the wrong place at the wrong time. This isn't a case where my client, the plaintiff, was trying to stop a warrant from being served on someone else. And this wasn't a case where he tried to bribe a judge as in the other cases. I think it's important to point out that in Phillips' report, he named Michael David Melton. He came up with identifiers not just in the report, but he attached a narrative that includes the date of birth of my client, which he could only have gotten from somewhere other than the witness that he took the interview from. It's also important to find out that there's nothing in the record that the investigative unit came in and conducted a further investigation. If you look at Phillips' affidavit, he states that, not that his report came based solely on what he was told by Griffith, but what it would have been. He's not even saying that he remembers taking the report in his affidavit. He's just saying, well, I would have done this. The same comes with Haynes. When Haynes, the investigator, looked at it, he said what the standard practice would have been is to forward on the affidavit of Griffith to make the probable cause and then the arrest warrant. There's nothing in the evidence, there's nothing in the record that says anything other than Haynes set up an appointment for the victim to make an affidavit. Whenever that did get forwarded to the Hunt County Attorney's Office, it got turned into a criminal complaint, and that's the first sworn thing that was brought before the court that eventually did the warrant. The criminal complaint is signed by Brandy Painter, an employee of the county attorney's office, and as counsel stated earlier, it says complainant bases her belief upon the observations of Kelly Phillips, does not include Haynes or any other investigator. It is based solely on Phillips. It is though Phillips is there in the room giving the statement to the judge. And, of course, my client's information does make it on the warrant. That is the material information, when we look at Hart, that gets into the warrant. The info that was used in the actual warrant was my client's information instead of the true assailant, Michael Glenn Melton. It's also important to note that not only does Alford, our expert, who worked at the Hunt County Sheriff's Office at the same time as Phillips, and Phillips both acknowledge that Michael Melton, the person that they're talking about, is a known offender to this county. Hunt County is about 80,000 people, and the Quillen area where this came out of is about 20,000. This is a sheriff's office that knows who they're supposed to deal with, and there's no way that he could have gotten this information somewhere other than the actual victim. Phillips acted recklessly by using that ancillary information to get my client's information that was put in his affidavit, in his report which went into the warrant. And, again, I would submit to you that it's material because of the fact that the guy who beat up Griffith is a known offender. I do want to touch on the 28J letter that was provided to this court. The personal identification system that was mentioned by Alford, it's important to note that the PID system is not just a system that keeps track of everyone's criminal history only. You can be in there for a witness. You could be in there as a victim. You could be in there for a number of reasons other than your criminal history. And even if it was just based on my client's criminal history, it should not have been the reason to put my client's information in the warrant. I think that a lot is still not in the record in this case, and it's true, we've asked for more time to conduct discovery. But all we have before us is the affidavits of my client who stated he's never been to Hunt County, never been to that part for that reason, and never been to Quinlan, Texas or known the victim in this case. And I would also submit to you that it's not in the record how close my client looks like Michael Glenn Melton, the true assailant. There's no photograph of the true assailant in the record, and it almost seems that appellant doesn't even want to acknowledge that my client was not the guy that beat up Mr. Griffith. He's not. There's no evidence that's saying that he was. Before I begin to repeat myself, I give my time back to the Court and open myself up for questions. Go ahead. Was there a physical identification made by the victim when your client was arrested? No. Your Honor, that's not in the record, but as far as I understand it, there was not. There was not. So there was no line-up or anything? Not to my understanding, no, Your Honor. Opposing counsel says that you bear the burden of establishing that his client is not entitled to qualified immunity. You agree that under the settled precedent that's the case, correct? Well, and I believe that we've met that burden by our allegations, and at this stage in the litigation that we should be able to move forward. And I would also submit to the Court, you know, if we go forward with litigation, Mr. Phillips can bring this same assertion again. I also think it's important to note that, you know, the facts of this case are unique. I mentioned the facts of what I believe Jennings and Hampton don't apply because, number one, in Hampton, I don't believe that it comes even close to the facts. The officer in that case put late eyes on the eventual person that was arrested, and he made his own affidavit and statements that he put in there. If the facts are so unique in this case, then how can, and you're saying the case law just doesn't address the situation, then how could the law be clearly established? Well, I would say that it doesn't address this fact scenario, and honestly, that's why there isn't, I believe, a case that has the exact same set of facts as our case. But I do believe Hampton applies. I'm sorry, Hart applies because of the fact that Phillips used those facts of my client's identifiers instead of the true assailants in his report. You said that Hart applies, but Hart says for use in an affidavit. Do we have any evidence here that there was, this misinformation was for use in an affidavit, which is what Hart requires? Right. This was just an incident report. There is an incident report, but the incident report was used solely for the sworn complaint that turned into the warrant. There's no evidence that nothing else went in there. Do we have any evidence that Phillips provided this information for use in an affidavit? There's nothing that I can point to in the record that says that he knew he was going to use this for an affidavit. What about Hunt County practice? What is Hunt County practice on incident reports? Well, Your Honor, we're not that far enough in the record to get that, but as far as— It's a summary judgment, and so you said we can rely on your allegations, but don't we need some evidence? And that's your burden to present. Right. Well, generally, incident reports are turned eventually into criminal complaints, and the county attorney's office then presents it to a judge for a warrant. How do we know that? Well, we know that, I believe, based on Alford's affidavit that he provided. Does he actually say that? There's a variety of— Hold it, hold it. Let me make sure he's completely answered that question, and then I heard somebody with Judge Elrod, and then let me come to Judge Costa. We can do it. Did you finish the answer? Well, I would only add that there was no other reason to provide an incident report other than for the procurement of a warrant. All right. Over to Judge Elrod, and then back to Judge Costa. Does Alford's affidavit actually discuss how a complaint is generated or a warrant? He doesn't. He doesn't even discuss that. He doesn't discuss the procedure. No, Your Honor, he doesn't. So we can't learn that from Alford's affidavit. Do you have a different answer to Judge Haynes' question? I believe that you can read into the affidavit that, basically, that this is why he got this information and why it was provided. But the record, no, is not clear on the actual procedure of Hunt County or any other agency on how the incident reports are always turned into warrants. But this is a case where there was an assault, there was an injury. There can be no other reason to take up this report of someone who gets beaten up. All right. The question to you was whether there was something in the record. And you've answered that, right? I believe so, Your Honor. All right. Back to Judge Costa. There are a variety of claims that can be brought under the federal constitution, under state tort law, for police misconduct, when evidence is fabricated, when someone's framed. In fact, I think you bring some state tort claims that aren't before us but were brought below. But the Frank's claim that is before us is really focused on the narrow issue of misleading the judge who's issuing a warrant. So what in the complaint or any other materials that were presented to the judge is the falsehood you're relying on? It's a two-paragraph complaint right in front of you. What's the falsehood? The falsehood is that whenever this complaint was presented, generally these complaints and orders are presented at basically the same time that Michael Melton was the person identified because it has my client's information when it gets to the KPS. That's the statement that we're looking at here. Exactly what is the falsehood that you're talking about? The falsehood that it identifies. Nothing in the complaint is false? I can't point to anything that's in the complaint, but I can submit to you that these are usually given in a packet format. The complaint and the order issuing the KPS are, you know, that's not in the record. And, you know, I admit that, but my understanding is that these are put together to be presented for the judge. And so what in the order is false? The order doesn't have it either, but the KPS does. The KPS is what has my client's information. What's the falsehood in the KPS? That identifies him with his date of birth and not the true assailant. That's how we get to my client instead of Michael Glenn Melton. Did you rely on the date of birth earlier in the case, or did you only rely on the middle name? I relied on both. Now, it also has a Social Security number here, at least four digits of one in the KPS. Yes, Your Honor. There was no Social Security number listed in the incident report, was there? No, there wasn't. Isn't that a unique identifier of individuals usually, a Social Security number? And if that wasn't provided by Deputy Phillips, then we can't say that all the information that was used in completing the affidavit and the complaint came from Deputy Phillips. They had to get information from somewhere else because Social Security isn't in Deputy Phillips' information. Yes, Your Honor. But I submit to you is the only information that we do have is the complaint says that everything was provided by Phillips. There's nothing in the record that says Haynes or any other person put that information in there. And let's say that Brandy Painter, the person who swore to the complaint, is the one that found that information. Well, the complaint says observations of K. Phillips. It doesn't say factual observations which had to do with what he did to Mr. Griffith, striking, kicking his foot, causing the victim pain. But it pulls from the identifying information in that. The only identifying information in that is not inconsistent with the way your client looks, number one, physical characteristics. So the only datum that is unique to Phillips' report and then shows up in the KPIS is the date of birth, which was excised. So we must – I guess we're assuming that the date of birth in both of those was the same. And, Your Honor – Is that correct? Maybe I'm understanding what you said, the date of birth and – The date of birth seems to be the only fact in Deputy Phillips' report that shows up in the KPIS. That actually shows up in the KPIS, yes. But I would submit to you, Your Honor, that the fact that his middle name was in the report and when Brandy Painter swore to this, she was given these – this small bit of identifiers that only came from Phillips that she took that information to put in the KPIS. But she called him Mike Melton. She did. But she – but as part of that packet has my client's information and not Michael Glenn's. Well, the other – the other question I'd ask has to do with the Franks case because the Franks case goes out of its way to say this is a very narrow ruling on the Fourth Amendment because, after all, you do interpose an objective magistrate before you issue these kinds of arrest warrants. And it says that it has to be instances of deliberate misstatements and reckless disregard. Is it your contention that any mistake implied raises a fact issue of recklessness? Your Honor, I believe the recklessness comes from Phillips taking information from a source other than the victim. And there is no other way he could have gotten my client's information than from someone other than the victim. And that would be what the reckless conduct is. Doesn't Hart say that here Phillips would have, in fact, entertained serious doubts as to the truth of what he was saying? Is there evidence that he, I mean, intentionally had doubts about the truth of it? Well, the serious doubt of the truth was that it was a known offender of the county. And the serious doubt of the truth is, is he got it from somebody other than the victim. It's obvious, and it is right there in front of him, a mouse click away, that he could have got the correct individual. And that's where he came up with the bad statement. Well, maybe there were two Michael Meltons, one above the other. That is – and that, of course, is possible. But you have – but Frank says to mandate an evidentiary hearing, the challenger's attack must be more than conclusory. It must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood, reckless disregard for the truth, accompanied by an offer of proof pointing out specifically the portion of the affidavit claimed to be false. And yes, Your Honor. And that is where I believe that Mr. Alford's affidavit is still valid and comes into play because he's not making a conclusory statement. He looks at the facts that is presented to him in part of this case and eliminates any other possibility where my client's information could have come from. Even if the Alford affidavit does establish that you've alleged reckless disregard as to the truth value of who the offender is here, I'm still stuck at trying to get the rule that applies. And as I heard your opposing counsel said, he said a patrolman will be liable under 1983 for money damages if he has a bad faith purpose to pass on false information. But you begin by saying a patrolman will be liable if he writes an incident report that contains false information because, as you just said to us, that generally eventually ends up as an arrest warrant. And I think that was Judge Haynes' question, so that's my question back to you. I don't see how you can allege that causal connection without making every single incident report actionable. So my specific question is, if the Supreme Court says we are looking to see if the non-affiant has relayed false information, how can a 2 a.m. incident report inevitably contemplate a Fourth Amendment arrest? And last point, factually at the bottom of the second page of the report, there are boxes that allow the patrolman to say offense status open, case filed to attorneys, county attorney, district attorney, Phillips didn't check any. So as I read this, he just makes a 2 a.m. incident report, and all it does is contemplate an investigation. It doesn't target anybody. And in no way does that, by not checking those boxes, refer or relay for an arrest. The question is? The question is, what's the significance, if you think of as any, of his not checking the boxes at the bottom, that to me would suggest he's contemplating or relaying for an arrest? I think in this specific case, as far as those boxes being checked, not checked, I'm sorry, not checked, is that this was the only piece of information that was used for the warrant. And I'm trying to answer your question, but I think I submit to this Court that this Court can make this ruling as narrow as it needs to be to fit into that. What incident report wouldn't then, in your scheme, inevitably lead to an arrest warrant? Your rule is, to me, very over-inclusive, even if their rule is under-inclusive. Right. Well, an incident report where, in just a hypothetical, Your Honor, would be an incident report that wouldn't be used in a warrant was there was an argument between two people and that was it. And they, you know, or somebody didn't drop off their child at a custody exchange on the right time, and there was no offense committed in the report. Let's try a different hypothetical. Let's suppose that there's a routine intersectional collision between two vehicles and the officer is sent out to make the usual investigation of who ran the stop sign or what witnesses there were or where the vehicles were located. And the officer, let's assume, negligently writes down the wrong name of the driver, puts down a wrong name just because he's not paying appropriate attention. So he sends the incident report in with the wrong name. The car is hauled off to the wrecking yard, that person's car, and it's discovered inside the car that there's contraband, drugs or pornography or whatever. And on the basis of that, there's an affidavit and the wrong person gets arrested because the name was written down wrong by the officer. The question is under heart, was that incident report of a routine intersectional collision for use in an affidavit? Well, and, Your Honor, I think because your scenario includes a situation where an actual arrestable offense was committed, the drugs found in the car. But as we have alleged, it's different from your scenario because your scenario is the officer either heard or wrote it down wrong. My question is, under heart, was the information by the officer, the negligently written down wrong name, quote, for use in an affidavit? Under your scenario, yes, that would be used in that affidavit. That information, that statement, it's wrong. Even though the officer would have no reason to believe in a routine collision that there would have been any subsequent arrest warrant or search warrant? Your Honor, in your situation, I would say that it's different from this fact pattern because this fact pattern, we are alleging that the officer acted recklessly by getting it from another source, not that he interviewed and got it wrong. Recklessness is recklessness, right? Well, this recklessness in this case was an affirmative action by the officer to get it from somewhere else, not that he heard it wrong from the witness or the — Recklessness would be a frank determination. Hold on. Yes, Your Honor. Hold on. Hold it, Judge Dennis. All right. Judge Smith, you said that he's responding to your question. All right. Now, back over here to Judge Grace and then to Judge Dennis. My question was, wouldn't recklessness be a factual determination? Yes, Your Honor. And Hart talks about the information being prepared for use in an affidavit. Isn't that the phrase from Hart? Yes, Your Honor. What we do know about what Phillips did in this case is we know he prepared a report. And this was a report he gleaned from an eyewitness. Unlike, for example, in a hit-and-run accident, where there may be a hit-and-run accident on a highway, a trooper gets called, an incident report is prepared, but the victim may not have any identification with regard to the hit-and-run driver. Isn't that correct? Yes, Your Honor. But this one, you have a perpetrator who says, this is who did this to me and gave a name. Yes. Isn't that right? Yes, Your Honor. And then we do know that what Phillips did is he took that report. He didn't file it away. He sent it to the Criminal Investigation Division, didn't he? Yes, Your Honor. Counsel. I'm sorry, Judge Dennis. Judge Dennis, I cut you. I just was going to ask, you did not allege negligence on the part of the girl? No, Your Honor. And negligence doesn't get us there. Recklessness does. And as I was answering Judge Smith's question, I believe that the affirmative action of Phillips to go find that information from somewhere else was a reckless act. Okay. And two quick questions. We don't know if he used other information or what that other information was, right? There's nothing in the record that tells us that. That's the first question. Your Honor, I believe that the record came to the conclusion of Alford based on the elimination of any other scenario. If it's we don't know, but we do have testimony that it could not have been from any other. So he used this computer system? Either this or another. I thought you backed off of that in your 28-day. You're saying he did use a computer system? Yes, Your Honor. Okay. Then my second question is, it seems unusual to me, and perhaps I'm wrong, that you would have Frank's liability where there is no error in the complaint or the warrant. In fact, I'm having trouble thinking of a Frank's case where there's no false statement that makes its way to the warrant. And I'm wondering if you know of such a case, because I'm having trouble thinking of a Frank's case where there's no actual false statement in either the complaint or the warrant. And if there's no false statement, I'm not aware of such a case. Are you? No, Your Honor. But, Your Honor, I would say that the false part is in that KPIS. The order is part of the order and the KPIS. The KPIS amounts to the warrant. Is the Social Security number the wrong number? Is that your client's Social Security number? That is my client's Social Security number, yes. And you're saying it wasn't your client, so that's the false statement. The false statement was putting my client's information. Right. Right. But let me ask you a question, because, you know, some of us were concerned about the panel majority saying that the Hart case is inconsistent with the Hampton and Jennings case. I see nothing in your argument today that really takes that on. You're willing to work with all of those and say your client's in a different position. Is that fair to say? Your Honor, I would say that those two cases don't apply, number one, because they're so factually distinct from mine. Like I said— But you're not saying that they are not good law. Oh, no. Okay. And, you know, I believe, Your Honor, that that goes back to my point of that I'm not asking for you to reverse any case. I'm not—I believe that this unique scenario can have as narrow a holding as this Court wants to allow my client to maintain his claim. Thank you. All right. Thank you, sir. Back to you, Mr. Davis, for rebuttal. Yes, Your Honor. If the panel has any questions for me, I'll take those. I'm trying to figure out the connection between the misstatement and the warrant. Do you agree it's foreseeable that an offense report could be used to obtain an arrest warrant at some point? You know, Your Honor, I do this a lot, and I generally don't see an offense report as a basis for a warrant. Usually, it goes through an investigative process, and they use the sworn complaints. It has been my experience— Even the offense report, not just for a warrant, even at trial, when you're preparing for trial, you get the offense report when you're talking to the witnesses, and that's part of the purpose of it, right? Yes, Your Honor. You know, you'll use the offense reports to cross-examine a witness at trial over the facts that occurred, but generally, my experience has been, and mine may be different, but my experience has been that most DAs want sworn statements from the victims in an investigation, not just a report from . . . Just a quick follow-up. This happened. He submits the offense report. It's not until about a year later that the complaint gets filed. If the day the DA filed that complaint, she came by the officer and said, Oh, I remember that case from last year. I remember this report. I just want to make sure everything's right. I'm going over to the courthouse to get a warrant. And he said, Oh, yeah, it's good to go. That's all accurate. Would that meet O'Brien's test in that scenario then? Your Honor, I think that if the officer had himself been involved in providing information, knowingly providing information for an affidavit, and he had been reckless in what he did or deliberately misleading in what he did, then it might satisfy Hart. But it's got to meet both of those prongs. Plus it's got to meet the requirement that it materially impacts the finding of probable cause. But that's not the situation we have here. Alford didn't give any opinion as to whether it would be relayed for an arrest, did he? No, Your Honor, he did not at all. Am I right to focus on a patrolman's opportunity to refer directly to an attorney? But in that little box at the bottom, does it sort of short-circuit the investigation and go there if the officer believes he has PC? Your Honor, I believe if the officer believes that he has PC, it can go directly up the chain. They can get a quick warrant and they can make an arrest. And it would seem those boxes sort of signal whether an officer feels that he has established that weight of evidence to arrest somebody. I think you're right, Your Honor. And in this case, clearly the officer just sent it through the routine. You know, every report goes through CID. And the vast majority of cases, things like this, don't ever get filed. Counsel, you're not claiming that in order for there to be a Fourth Amendment violation that the officer would have to knowingly and recklessly provide the false information. It's one or the other, isn't it? Yes, Your Honor. I believe it's one of three, either intentionally, knowingly, deliberately. I guess four things, the way they're all set out. Intentionally, knowingly, deliberately, recklessly. You know, I've seen cases that have said all four. I'm sorry, Your Honor? You'd need one of them to have a violation, wouldn't you? Well, you'd just need one of those criteria. Yes, Your Honor. And there was silence among the multitude. A rare event, indeed. No other questions? All right, a rarity. Mr. Davis, we get time back. Thank you, Mr. Duff, for your briefing and your oral argument, and especially for answering the questions of the Court directly. This concludes the oral argument portion.